**NOT FOR PUBLICATION**                                              **CLOSED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CESAR N. ARAUJO, | : |
| Plaintiff, | : Civil Action No. 08-5655 |
| v. | : |
| COMMISSIONER OF SOCIAL SECURITY, | : **OPINION & ORDER** |
| Defendant. | : |
| | : Dated: September 8, 2009 |

**HOCHBERG, District Judge:**

      This matter comes before the Court upon Plaintiff Cesar N. Araujo's motion to review a final determination of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g).  The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

    **I.  BACKGROUND**

**A.**    **Plaintiff's Medical And Vocational History**

      Plaintiff is a 48-year-old man who received a high school education in his native Peru. (Tr. 24.)  He last worked as a warehouse worker in a supermarket.  (Tr. 199.)  He alleges that he became disabled on February 20, 2002 (Tr. 70), due to a "back disorder (Discogenic & Degenerative)."  (Tr. 30.)

1

Plaintiff injured his back at work on February 20, 2002 while moving cases weighing approximately 40 pounds. (Tr. 136.) He reported that he was experiencing right lower back pain to his supervisor, who referred him to a clinic where he was prescribed pain medication. (Tr. 136.) Plaintiff returned to work the same day. (Tr. 136.) The following week, the pain in his back increased, and he was sent to Dr. Steven Nehmer, who advised him to continue the pain medication and to begin physical therapy. (Tr. 136.) Plaintiff completed two weeks of physical therapy and returned to work for one day, but was only able to work for two hours because of severe back pain. (Tr. 136.)

An MRI of Plaintiff's lumbar spine was performed on March 19, 2002, and revealed a posteriorly herniated L5-S1 disc, Grade 1 spondylolisthesis[1] of L5, and possible spondylosis.[2] (Tr. 133.) There was no evidence of nerve root compression or spinal canal or lateral recess stenosis. (Tr. 133.) Dr. Nehmer prescribed a lumbar epidural steroid injection, which was administered in April 2002. (Tr. 97, 136.)

On June 4, 2002, Plaintiff sought treatment from Dr. Ralph E. Sweeney, Jr., M.D., complaining that the steroid injection caused the pain to spread to both sides of his back and to his legs, caused him difficulty in standing, walking and sleeping, created a tingling feeling and weakness in his right leg, and necessitated an entire week of bed rest. (Tr. 134, 136.) Dr. Sweeney noted that this increase in pain was an unusual reaction to the injection. (Tr. 134.) Upon examination, Dr. Sweeney found Plaintiff to have symmetric reflexes, symmetric strength,

---

1 Spondylolisthesis is the displacement of a vertebra over a lower segment due to a congenital defect or fracture. *Dorland's Medical Dictionary for Healthcare Consumers* (2007) [hereinafter, "*Dorland's Medical Dictionary*"].

2 Spondylosis is the consolidation of the vertebral joint due to disease, injury, or a surgical procedure. *Dorland's Medical Dictionary*.

2

but limited trunk movement.  (Tr. 134.)  Plaintiff complained of pain on any movement of his trunk, leg or hips, but Dr. Sweeney concluded that the pain was generally non-physiologic and that Plaintiff demonstrated symptom magnification: for example, Plaintiff complained of pain in his leg before the limb was actually touched.  (Tr. 134.)

Based on these results, Dr. Sweeney diagnosed Plaintiff with spondylolisthesis at L5.  (Tr. 134.)  Dr. Sweeney noted that although Plaintiff's condition could be treated with surgery, his weight made a surgical procedure too risky.  (Tr. 135.)  Dr. Sweeney prescribed a second epidural injection and concluded that "if [Plaintiff] fails to respond to the above recommended injections he is at maximal medical treatment."  (Tr. 135.)

Plaintiff received the second epidural injection on June 25, 2002, (Tr. 138), and returned to Dr. Sweeney on July 11, 2002.  (Tr. 96.)  Dr. Sweeney noted that Plaintiff complained he was still experiencing lower back pain associated with various movements.  (Tr. 96.)  On examination, Dr. Sweeney found Plaintiff's flexion to be 70 degrees, his extension to be 10 degrees, and that both motions caused Plaintiff to experience back pain.  (Tr. 96.)  Plaintiff inquired about the possibility of surgery, but Dr. Sweeney again recommended against it.  (Tr. 141.)  The record indicates that this was the last time Plaintiff sought medical treatment for his back pain until January 2004.

Between January 2004 and May 2005, Plaintiff saw Dr. Joyce Nkwonta, M.D., at least seven times.  (Tr. 109-116.)  Plaintiff first saw Dr. Nkwonta on January 7, 2004, at which time he complained of difficulty standing, sitting, and walking for any appreciable length of time, and lower back pain with accompanying right leg pain.  (Tr. 116.)  On examination, Dr. Nkwonta noted that Plaintiff's gait was normal and that he was able to walk on his heels and toes.  Both

3

straight leg raise ("SLR") and sitting straight leg raise ("SSLR") tests were negative. (Tr. 116.) Dr. Nkwonta found no significant loss of sensation or weakness. At Plaintiff's request, Dr. Nkwonta completed a hospital-issued form that excused Plaintiff from work and/or school from January 7, 2004 through January 21, 2004, citing back pain that radiated into Plaintiff's right leg and caused numbness in his right heel.[3] (Tr. 108.)

Plaintiff continued to complain of varying degrees of back pain during his subsequent visits. On February 6, 2004, Dr. Nkwonta completed a State of New Jersey Division of Family Development Examination Report, listing Plaintiff's diagnosis as "chronic lower back pain and lumbar radiculopathy." (Tr. 117.) The report contained a Functional Limitations section in which Dr. Nkwonta recorded that Plaintiff was limited in standing, walking, climbing, bending and lifting, but offered no specific supporting evidence. (Tr. 117.) On May 19, 2004, Plaintiff reported reduced back pain in general and stated that it only occurred in conjunction with prolonged standing or walking. (Tr. 113.) On August 24, 2004, Plaintiff reported his back pain had increased in intensity and was radiating through his lower right side and back. This pain was exacerbated by prolonged sitting or walking. (Tr. 111.) His SLR and SSLR results, his gait, and his heel and toe walking remained normal on his subsequent visits. (Tr. 109, 110.)

On September 28, 2005, Dr. Justin Fernando, M.D., conducted a consultative orthopedic examination of Plaintiff at the request of the Social Security Administration. (Tr. 118.) Plaintiff complained of pain in his lower back that radiated down into the crease of his buttock and sometimes down to his toes. (Tr. 118.) Upon examination, Dr. Fernando observed Plaintiff to

---

[3] On a number of visits to Dr. Nkwonta's office, Plaintiff sought relief from obligations including child support payments, jury duty, and classes required by the Social Security Administration. (Tr. 109-116.)

be in "no acute distress." (Tr. 119.) Dr. Fernando found Plaintiff's upper extremities, lower extremities and cervical spine to be normal; he exhibited full ranges of motion and full strength in his arms and legs; Dr. Fernando's examination of Plaintiff's thoracic and lumbar spines revealed limitation of flexion at 75 degrees, full lateral flexion bilaterally, and full rotary movements bilaterally. (Tr. 119.) An SLR test was done to about 60 degrees bilaterally, and to 90 degrees in the upright position, with no trigger points. (Tr. 119.) Dr. Fernando reported that Plaintiff possessed a normal gait, and was capable of walking on his heels and toes without difficulty. Plaintiff did not require any assistance getting on or off the exam table, or up from his chair, and performed a squat to 50% of full. (Tr. 119.) The remaining examination was unremarkable. The doctor diagnosed Plaintiff with chronic lower back pain (disk herniation at the lumbosacral level with subjective radiculopathy) with a "fair" prognosis. (Tr. 120.) Based on these results, Dr. Fernando concluded that Plaintiff had only "mild limitations associated with bending, lifting, and possibly for carrying weights." (Tr. 120.)

**B.     Procedural History**

On July 13, 2005, Plaintiff filed a Title II application for disability insurance benefits, and a Title XVI application for Supplemental Security Income ("SSI"). (Tr. 20.) The claims were denied initially on December 12, 2005, and upon reconsideration on April 6, 2006. (Tr. 20.) Plaintiff filed a timely written request for a hearing before an Administrative Law Judge ("ALJ") on April 11, 2006. (Tr. 20.) Plaintiff appeared and testified at a hearing before ALJ Joel H. Friedman, held on September 18, 2007. (Tr. 20.) A partially favorable decision was entered on January 25, 2008. (Tr. 13.) This decision became the final decision of the Commissioner on September 15, 2008, when the Appeals Council declined review. (Tr. 4-11.)

Plaintiff filed a complaint in this Court on November 14, 2008.[4]

**C.     The Disability Standard And The Decision Of The ALJ**

   1.     <u>The Statutory Standard For A Finding Of Disability</u>

An individual is considered disabled under the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An individual will be deemed disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which

---

4 Plaintiff's brief was due to this Court on April 20, 2009, but was not timely filed. On April 28, 2009 the Court issued an Order To Show Cause why this case should not be dismissed, with responses due on May 6, 2009. Plaintiff filed his brief on April 30, 2009, with a letter explaining that counsel was out of the office for "nearly two weeks for the Jewish holidays as well as a medical condition during the month of April." *See* Docket No. 8.

   Plaintiff is represented by the law firm of Langton & Alter, who represents claimants in a number of other Social Security cases before this Court, including *Mirabal v. Commissioner of Social Security* (08-1079); *Johnson v. Commissioner of Social Security* (08-1124); *Joassaint v. Commissioner of Social Security* (08-1606); *Battiato-Musson v. Commissioner of Social Security* (08-3531); and *Grimard v. Commissioner of Social Security* (08-6401). Langton & Alter has repeatedly failed to file timely briefs in these matters. Indeed, briefs have been filed in these cases only at the prodding of the Court. This Order shall serve as notice to Langton & Alter that the Court will, by separate Order, convene a hearing as to why sanctions should not be imposed for failure to comply with the filing deadlines of Local Civil Rule 9.1(a). Because of this firm's habitual filing of extremely late briefs, the Court orders Mssrs. Langton and Alter to inform all new clients prior to retention that, if the firm's briefs are filed late, sanctions may include dismissal of the plaintiff's case.

exists in the national economy….” 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant meets this definition of disability, the Commissioner applies the following sequential analysis prescribed by Social Security regulations, 20 C.F.R. § 416.920(a):

Step One: Substantial Gainful Activity.  The Commissioner first considers whether the claimant is presently employed, and whether that employment is substantial gainful activity.[5]  If the claimant is currently engaged in substantial gainful activity, the claimant will be found not disabled without consideration of his mental condition.  20 C.F.R. § 416.920(b).

Step Two: Severe Impairment.  If the claimant is not engaged in substantial gainful activity, he must then demonstrate that he suffers from a severe impairment or combination of impairments considered severe.  A "severe impairment" is one "which significantly limits [the claimant's] physical or mental capacity to perform basic work activities."  If the claimant does not demonstrate a severe impairment, he will be found not disabled.  20 C.F.R. § 416.920(c).

Step Three: Listed Impairment.  If the claimant demonstrates a severe impairment, the Commissioner will then determine whether the impairment meets or equals an impairment listed on the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant has such an impairment, he is found disabled.  If not, the Commissioner proceeds to the fourth step.  20 C.F.R. § 416.920(d).

Step Four: RFC.  At Step Four, the Commissioner determines whether, despite his impairment, the claimant retains the residual functional capacity ("RFC")[6] to perform his past

---

[5] "Substantial" work involves significant physical and mental activities. "Gainful" work is performed for pay or profit.  20 C.F.R. § 416.972.

[6] RFC designates the claimant's ability to work on a sustained basis despite his physical or mental limitations.  The RFC determination is not a decision as to whether a claimant is

relevant work. If so, the claimant is found not disabled and the inquiry proceeds no further. If not, the Commissioner proceeds to the fifth step. 20 C.F.R. § 416.920(v), (e)-(f).

Step Five: Other Work. If the claimant is unable to perform his past work, the Commissioner considers the individual's RFC, age, education, and past work experience to determine if he is able to make an adjustment to other work. If he cannot do so, the individual will be found disabled. 20 C.F.R. § 416.920(g).

This five-step analysis involves shifting burdens of proof. *Wallace v. Sec'y of Health and Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant bears the burden of persuasion through the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the analysis reaches the fifth step, however, the Commissioner bears the burden of proving that the claimant is able to perform work available in the national economy. *Id.*

2.   The ALJ's Decision

Applying this five-step analysis, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since February 20, 2002, his alleged disability onset date. (Finding 2, Tr. 22.) At step two, he found that Plaintiff suffers from "degenerative disk disease," a severe impairment, (Finding 3, Tr. 22), but at step 3 he determined that Plaintiff's condition did not meet or equal an impairment or combination of impairments listed in Appendix 1 of the Social Security regulations.[7] (Finding 4, Tr. 23.)

---

disabled, but is used as the basis for determining the particular types of work a claimant may be able to perform despite his/her impairment(s). *See* 20 C.F.R. § 416.945.

[7] In making this finding, the ALJ considered the disorders of the spine in Listing 1.04, but found that the record did not demonstrate that Plaintiff suffered from "nerve root compression" with the factors noted in subsection A, nor did it show the presence of "spinal arachnoiditis (Subsection B) or lumbar spinal stenosis resulting in an inability to ambulate effectively. (Subsection C)." (Finding 4, Tr. 23.) Plaintiff does not contest this finding.

At step four, the ALJ determined that before April 5, 2006, Plaintiff retained the RFC to perform the full range of light work. (Finding 5, Tr. 23-25.) In making this finding, the ALJ gave controlling weight to Dr. Fernando's opinion that Plaintiff had only mild limitations in bending, lifting and possibly for carrying weights. (Finding 5, Tr. 25.) The ALJ gave less weight to Plaintiff's statements concerning the intensity, persistence, and limiting effects of his pain, which the ALJ found to be not entirely credible. (Finding 5, Tr. 24.) Given this RFC, the ALJ found that Plaintiff was unable to perform his past relevant work as a grocery warehouse worker. (Finding 7, Tr. 26.)

Proceeding to Step 5, the ALJ considered Plaintiff's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404 Subpart P, Appendix 2. (Finding 11, Tr. 26-27.) Relying on the Guidelines, the ALJ determined that there were a significant number of jobs in the national economy that Plaintiff could have performed prior to April 5, 2006. Answering question five affirmatively, the ALJ found Plaintiff to not be disabled prior to April 5, 2006, and denied his application for disability benefits before that date. (Finding 11, 26-27.)[8]

## II. DISCUSSION

A.   **Standard Of Review**

This Court reviews the decision of the Commissioner to determine whether there is substantial evidence in the administrative record supporting his decision. 42 U.S.C. § 405(g); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is "more than a mere

---

[8] On April 5, 2006, Plaintiff was involved in a car accident that resulted in further injury to his back. The ALJ found that after the accident, Plaintiff had the RFC to do less than sedentary work, and that this restrictive RFC precluded him from doing other work. The ALJ thus found Plaintiff disabled after April 5, 2006.

scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if this Court might have reasonably made a different finding based on the record. *Simmonds v. Hecker*, 807 F.2d 54, 58 (3d Cir. 1986).

**B.   Review Of The Commissioner's Decision**

Plaintiff challenges the decision of the ALJ on grounds that the ALJ's denial of benefits prior to April 5, 2006 is not supported by substantial evidence. Specifically, Plaintiff argues that: (1) the ALJ failed to consider Plaintiff's obesity at Step 2, (Pl. Br. 32); (2) the ALJ's RFC determination was "totally unexplained," (Pl. Br. 13-14); and (3) the ALJ did not properly evaluate the credibility of Plaintiff's subjective complaints of pain. (Pl. Br. 13.) The Court will consider each argument in turn.

   *1. Plaintiff's Obesity*

Plaintiff argues that the ALJ erred at Step Two by not finding Plaintiff's obesity to be a "severe" impairment. (Pl. Br. 32.) However, Plaintiff has not presented any evidence demonstrating that his obesity "significantly limits [his] physical or mental capacity to perform basic work activities,"[9] which it is his burden to do. 20 C.F.R. § 416.920(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Moreover, the ALJ conducted a comprehensive review of

---

9 Basic work activities are "the abilities and aptitudes necessary to do most jobs. Examples of these include -- (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b)(1)-(6).

Plaintiff's medical records, which did not show that Plaintiff's obesity limited his basic physical functioning. For example, Dr. Sweeney found that Plaintiff's weight made back surgery risky; not that his weight precluded his ability to perform work. (Tr. 135.) Dr. Fernando noted Plaintiff's height and weight, but found only mild limitations for bending, lifting, and carrying, and did not cite obesity as the cause. (Tr. 25.) Similarly, Dr. Nkwonta opined that Plaintiff possessed the functional capacity to conduct his daily activities, with no mention of his obesity. (Tr. 25.) Finally, Plaintiff's daily living activities are consistent with the medical evidence and demonstrate an ability to perform basic work: Plaintiff reported that he shopped for and prepared meals, cleaned his house and yard, did laundry, and cared for his dog. (Tr. 73-75.) This evidence, taken together, provides strong support for the ALJ's determination that Plaintiff's obesity does not constitute a severe impairment.[10]

### 2. The ALJ's RFC Determination

At Step Four, the ALJ found that Plaintiff retained the RFC to perform the full range of light work.[11] Plaintiff's complaint regarding this RFC determination is that it was "totally unexplained," (Pl. Br. 13), and therefore not in compliance with Third Circuit case law, which requires that an RFC determination must "be accompanied by a clear and satisfactory explication

---

10 Plaintiff also complains that "the ALJ doesn't mention plaintiff's obesity" in his decision. (Pl. Br. 21.) This, however, is not the case. The ALJ explicitly noted Plaintiff's obesity while discussing Dr. Sweeney's diagnosis. (Tr. 24 (noting that Plaintiff's "history was significant for obesity").) The ALJ also noted that Plaintiff gained 40-50 pounds after his injury, and that spinal surgery would be risky because of this weight gain. (Tr. 24.) The inclusion of these facts reflects that the ALJ was cognizant of Plaintiff's weight when evaluating his condition.

11 Persons capable of "light work" have the ability to lift or carry up to twenty pounds occasionally and up to ten pounds frequently, to walk or stand up to six hours a day, and to sit for up to two hours a day. 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling (SSR) 83-10.

of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). This complaint, however, is unfounded. The ALJ supported the RFC determination with a thorough analysis of Plaintiff's medical records, which provide substantial evidence for his findings. (Finding 5, Tr. 24-25.)

For example, the ALJ considered Plaintiff's MRI results, which revealed no evidence of nerve root compression, or spinal canal or lateral recess stenosis, the disorders of the spine described in the Listing of Impairments. 20 C.F.R. §§ 404.1520(d), 416.920(d). The ALJ gave great weight to Dr. Fernando's observations that Plaintiff was in no "acute distress," had a "normal gait," and was able to walk on "heels and toes without difficulty." (Tr. 25, 119.) The ALJ also noted Dr. Fernando's findings that Plaintiff had full lateral flexion bilaterally and full rotary movements bilaterally in his thoracic and lumbar spine, full ranges of motion and full strength in his lower extremities, and normal reflexes and sensation. (Tr. 25, 119.) Overall, Dr. Fernando concluded that the Plaintiff had only "mild limitations associated with bending, lifting, and possibly for carrying weights." (Tr. 119.) These findings are consistent with those of Plaintiff's treating physicians, Dr. Sweeney and Dr. Nkwonta, who also found Plaintiff to have normal gait, ability to walk on heels and toes, intact reflexes and sensation, and full muscle strength. (Tr. 95, 111, 116.)

In addition, Plaintiff stated he was capable of taking care of his dog, cooking meals, doing yard work, cleaning his house, and occasionally caring for his children. (Tr. 73-78.) Taken together, the medical evidence, combined with Plaintiff's ability to perform daily tasks, provides substantial support for the ALJ's determination that Plaintiff retained the capacity to perform light work.

The ALJ did not afford significant weight to Dr. Nkwonta's opinions that Plaintiff had limitations in standing, walking, climbing, and lifting, and that Plaintiff could not work from May 20, 2005 to May 20, 2006 because of chronic back pain. (Tr. 25.) While a treating physician's opinions are generally given great weight, they are not controlling if contradicted by other medical evidence. *Allen v. Bowen*, 881 F.2d 37, 41, 42 (3d Cir. 1989).[12] Here, the ALJ rejected Dr. Nkwonta's opinions because they were inconsistent with Dr. Nkwonta's own treatment notes. (Tr. 25.) For example, the ALJ noted that on the day Dr. Nkwonta concluded that Plaintiff could not work, the doctor also opined that Plaintiff had the functional capacity to conduct his normal activities. (Tr. 25.) Similarly, on a February 6, 2004 State of New Jersey Division of Family Development Examination Report, Dr. Nkwonta noted that Plaintiff had limitations associated with standing, walking, climbing, bending, and lifting, but listed Plaintiff's disability as "Class II," which corresponds to the ability to engage in normal activities despite a handicap. (Tr. 117.) At all times, Dr. Nkwonta found Plaintiff to have normal gait, intact reflexes and sensation, and full muscle strength, findings inconsistent with an inability to work. (Tr. 111, 116.) Moreover, the ALJ noted that Dr. Nkwonta did not explain or support her finding that Plaintiff had physical limitations with reference to any specific medical evidence. (Tr. 25 (noting that there "are no other specifics").) Thus, the ALJ properly afforded less weight to the opinions of Dr. Nkwonta.[13]

---

12 Additionally, Dr. Nkwonta's finding that Plaintiff could not work is not entitled to any special weight under the Social Security regulations because it is a conclusion about an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e).

13 The ALJ did not reject Dr. Nkwonta's opinions because they were made on a welfare form or "scratch sheet," as Plaintiff suggests. (Pl. Br. 19-20.) Rather, as explained above, the ALJ found that Dr. Nkwonta's opinions were not supported by the evidence. The ALJ noted that the opinions were made on a "scratch sheet" because he found it significant that Plaintiff sought Dr. Nkwonta's treatment for the purpose of being relieved of certain obligations, such as jury duty

3. *Plaintiff's Pain*

Finally, Plaintiff claims that the ALJ did not consider "any" of Plaintiff's subjective complaints regarding his pain, as it was his duty to do. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (ALJ must give Plaintiff's subjective complaints of pain serious consideration and this consideration must be detailed in the written decision). (Pl. Br. 27.) Instead, Plaintiff argues that although "all the doctors" diagnosed Plaintiff as being in pain, the ALJ addressed Plaintiff's complaints in "[one] boiler-plated, non-case specific, formatted finding . . . [which] says nothing, [] means nothing, and [] commits to nothing." (Pl. Br. 27-28.)

Plaintiff's assertions are without merit. The ALJ dedicated twelve paragraphs of his decision to an evaluation of Plaintiff's subjective complaints of pain. (Tr. 24-25.) The ALJ outlined the proper standard for reviewing complaints of subjective pain,[14] and employed that standard to comprehensively analyze Plaintiff's complaints against the medical evidence in the record. After reviewing the record in its entirety, the ALJ ultimately concluded that although Plaintiff's impairment could cause his alleged symptoms, his complaints regarding the severity and frequency of those symptoms were not entirely credible. (Tr. 24.) In support of this conclusion, the ALJ cited Dr. Sweeney's determination that Plaintiff "demonstrated symptom

---

and child support, even though his pain was not particularly severe. (Tr. 25.)
[14] The procedure for evaluating complaints of pain is outlined in 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Regulations 96-4p and 96-7p. As explained by the ALJ, pursuant to these regulations, an ALJ must look to: "(1) The claimant's daily activities; (2) The location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); (7) Any other factors concerning the claimant's function limitations and restrictions due to pain or other symptoms." (Tr. 23-24.)

magnification with non-physiologic responses," and Dr. Fernando's assessment that Plaintiff was in "no acute distress." (Tr. 24-25.) The ALJ also gave weight to the fact that "the record reveals significant gaps in the claimant's history of treatment, which suggests that the symptoms may not have been as serious as had been alleged with this application and appeal." (Tr. 25.) This determination is also supported by Plaintiff's ability to perform daily tasks such as taking care of his dog, cooking meals, doing yard work, cleaning his house, and occasionally caring for his children. (Tr. 73-78.) Because Plaintiff's claims regarding the severity and frequency of his symptoms were not corroborated by the objective medical records, or by Plaintiff's testimony, the ALJ properly found them to be less credible.[15]

### III. CONCLUSION

For the reasons set forth above, and after careful review of the record in its entirety, the Court finds that the ALJ's conclusion that Plaintiff was not disabled prior to April 5, 2006 is based on substantial evidence. Accordingly, this Court will **AFFIRM** the Commissioner's decision to deny Plaintiff Social Security benefits.

Therefore, **IT IS** on this 8th day of September, 2009, hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that this case is **CLOSED**.

    /s/ Faith S. Hochberg
Hon. Faith S. Hochberg, U.S.D.J.

---

[15] Although each doctor found Plaintiff to be in some pain, only Dr. Nkwonta determined that Plaintiff was limited due to this pain. As discussed above, the ALJ's decision to reject Dr. Nkwonta's opinion was well supported by the evidence.